**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-20-00461-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| David Bernhardt, et al., | |
| Defendants. | |

The United States Fish and Wildlife Service (FWS) issues permits, pursuant to the Endangered Species Act (ESA) and Convention on International Trade and Endangered Species of Wild Fauna and Flora, to individuals for the importation of animal trophies from sport hunts occurring overseas. In the litigation presently before the Court, four Plaintiffs[1] challenge the FWS's authorization of twelve leopard import permits from hunts that are expected to occur in the countries of Zimbabwe, Tanzania, and Zambia.[2]

Pending before the Court is the Federal Defendants' Motion to Dismiss for lack of subject matter jurisdiction. (Doc. 11.) Defendants assert that Plaintiffs have failed to sufficiently allege Article III standing. In the alternative, Defendants request a change of venue to the United States District Court for the District of Columbia. (Doc. 11.) The motion is fully briefed. (Docs. 13, 17.) After consideration of the parties' briefing, the

---

[1] Plaintiffs include the Center for Biological Diversity, Humane Society International, Humane Society of the United States, and Ian Michler.

[2] Plaintiffs no longer seek review of the import permit related to the country of Mozambique. (Doc. 13 at 4 n.4.)

Court will deny both the motion to dismiss and request for change of venue.

**I.     Background**

The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) is a multilateral treaty signed on behalf of the United States that regulates the international trade of imperiled species. 27 U.S.T. 1087. CITES is incorporated into United States law through the ESA and implemented by the FWS through regulations. 16 U.S.C. §§ 1531-1544; 50 C.F.R. §§ 23.1-23.92.

In three appendices, CITES lists the species subject to its provisions, "each of which provides a different level of protection and is subject to different requirements." 50 C.F.R. § 23.4. The leopard (*Panthera Pardus*) is listed in Appendix I. 50 C.F.R. § 23.91; CITES Appendices, *available* at https://www.cites.org/eng/app/appendices.php (last visited June 17, 2021).  Pursuant to CITES's implementing regulations, it is generally unlawful for a person to import "any specimen of a species listed in Appendix I." 50 C.F.R. § 23.13(a). However, an individual may import an Appendix-I species by obtaining an import permit from FWS. *Id.* §§ 23.20(e), 23.35.

Prior to issuing an import permit for an Appendix-I specimen, FWS must find that "the proposed import permit would be for purposes that are not detrimental to survival of the species." *Id.* § 23.35(c). Section 23.61 sets forth the factors FWS must consider in making a "non-detriment finding" and provides that the finding must be based on "the best available biological information." *Id.* § 23.61(c), (e), (f). The regulations further provide that "[i]n cases where insufficient information is available or the factors [] are not satisfactorily addressed, [FWS must take] precautionary measures and would be unable to make the required finding of non-detriment." *Id.* § 23.61(f)(4).

In this action, Plaintiffs challenge the issuance of twelve leopard import permits, asserting FWS acted arbitrarily, capriciously, and contrary to law when it (1) did not consider the required factors set forth in 50 C.F.R. § 23.61, (2) failed to use the best available biological information, and (3) did not take precautionary measures and made a non-detriment finding where insufficient information was provided and the factors were

1  not met. (Doc. 10 at 57-62.)

2  **II.    Motion to Dismiss Standard**

3  Standing under Article III of the Constitution is a limitation on a district court's

4  subject matter jurisdiction and is properly addressed in a Rule 12(b)(1) motion. *Catacean*

5  *Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack

6  may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

7  2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint

8  are insufficient on their face to invoke federal jurisdiction." *Id.* By contrast, a "factual

9  challenge 'rel[ies] on affidavits or any other evidence properly before the court to contest

10 the truth of the complaint's allegations." *Courthouse News Serv. v. Planet*, 750 F.3d 776,

11 780 (9th Cir. 2014) (citation omitted)

12 Defendants do not rely on affidavits or any other evidence to dispute the truth of the

13 complaint's allegations, but rather assert that the allegations in the complaint are

14 insufficient to establish standing. Thus, Defendants raise a facial attack on Plaintiffs'

15 complaint, and the Court will "treat the factual allegations in the complaint as true." *Id.*

16 **III.   Discussion**

17 **A. Plaintiffs Sufficiently Allege Standing**

18 "[T]he irreducible constitutional minimum of standing contains three elements."

19 *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered

20 an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and

21 particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citations

22 omitted). "Second, there must be a causal connection between the injury and the conduct

23 complained of—the injury has to be fairly traceable to the challenged action of the

24 defendant, and not the result of the independent action of some third party not before the

25 court." *Id.* (cleaned up). "Third, it must be 'likely,' as opposed to merely 'speculative,' that

26 the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). "The

27 party invoking federal jurisdiction bears the burden of establishing these three elements."

28 *Id.* "At the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (citation omitted).

In the pending motion, the parties dispute only the elements of causation and redressability. While causation and redressability do not exist when the injury is the result of "*unfettered* choices made by independent actors not before the courts," standing is not precluded simply because the injury is directly caused by a third party. *Lujan*, 504 U.S. at 562 (emphasis added). In cases involving third parties—here the hunters and countries authorizing the hunts—"causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction." *Id.* "To plausibly allege that the injury was 'not the result of the *independent* action of some third party,' the plaintiff must offer facts showing that the government's unlawful conduct 'is at least a substantial factor motivating the third parties' actions.'" *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation omitted). "So long as the plaintiff can make that showing without relying on 'speculation' or 'guesswork' about the third parties' motivations, she has adequately alleged Article III causation." *Id.*; *see also Lujan*, 504 U.S. at 562 (noting plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury").

Plaintiffs sufficiently allege that FWS's authorization of import permits cause injury to Plaintiffs' cognizable interest in observing leopards and that their injury will likely be redressed by setting aside the allegedly unlawful permits. Plaintiffs allege, with factual support, that the challenged import permits are "prerequisites" to the trophy hunter embarking on a hunt, and without import authorizations and the ability to bring a trophy home, the "[a]pplicants would not kill the target leopards if the service did not" issue an import permit. (Doc. 10 at ¶¶ 20, 136.) In support, Plaintiffs allege that "U.S. trophy hunters have declared under penalty of perjury that if they are unable to import their trophies, they do not know if they will continue with a scheduled hunt." (*Id.* at ¶ 137.) Further, the FWS states in its own guidance "that most hunters want to know before their hunt whether they

- 4 -

qualify for a permit to import." (*Id.* at ¶ 138.) Plaintiffs also allege that U.S. trophy hunters import, on average, over half of all leopard trophies in trade; and based on past events involving other animals, if U.S. imports were to decrease, the number of leopards typically killed by U.S. hunters would likely not be supplanted by hunters from other countries. (*Id.* at ¶ 24.) Based on these allegations and the supporting facts, the Court finds that it is plausible, and not merely speculative, that the applicants' decisions to hunt leopards for trophies are at least substantially motivated by FWS's issuance of import permits so as to produce causation and redressability. *See Mendia*, 768 F.3d at 1013; *cf. Cary v. Hall*, 2006 WL 6198320, *6 (N.D. Cal. Sept. 30, 2006) (recognizing that trophies are the end goal of sport hunters, and therefore, "causation would *not* be implausible if the exemption allowed the importation into the United States of trophies of the three antelope species taken in the wild." (emphasis added)). Accordingly, the Court will deny the motion to dismiss for lack of standing at this stage in the proceedings.[3]

## B. Denial of Request to Transfer

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The Court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). In *Jones*, the Ninth Circuit provided the following factors to consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

---

[3] Defendants primarily rely on non-binding decisions, including *Friends for Animals v. Ashe*, 174 F. Supp. 3d 20 (D.D.C. 2016), *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29 (D.D.C. 2014), and *Fund for Animals v. Norton*, 295 F. Supp. 2d 1 (D.D.C. 2003). The Court finds these cases unpersuasive because they involve distinguishable facts, complaints with different allegations, and factual challenges with evidence not before this Court.

*Id.* at 498-99. The party moving for transfer has the burden of demonstrating that transfer is appropriate. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Additionally, the moving party "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

After consideration of the relevant factors, the Court will deny the motion to transfer.  The Court finds factors one, two, five, six, seven, and eight are neutral or not applicable, as this case involves review of an administrative record and will likely be resolved on a motion for summary judgment. The remaining two factors—three and four—weigh against transfer because Plaintiffs chose to bring suit here, and this district does have an interest in that Plaintiff Center of Biological Diversity's headquarters are in this district. Lastly, courts also may consider the congestion of the court's docket and the amount of time to resolve matters in each forum. *Decker Coal Co.*, 805 F.2d at 843. While Defendants suggest that they may receive a speedier resolution of their case in the District of Columbia due to more cases being filed in this Court, this factor alone is insufficient. In sum, Defendants have failed to make a strong showing that the inconvenience to the parties or the interest of justice warrant transfer.

**IV.    Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss or, in the alternative, to Transfer Venue to the U.S. District Court for the District of Columbia (Doc. 11) is **DENIED**.

Dated this 17th day of June, 2021.

Honorable Jennifer G. Zipps
United States District Judge

- 6 -