WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., <br> Plaintiffs, <br> v. <br> David Bernhardt, et al., <br> Defendants. | No. CV-20-00461-TUC-JGZ <br><br> **ORDER** |

Pending before the Court is Defendant-Intervenor Safari Club International's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Doc. 23.) Safari Club argues that Plaintiffs have failed to sufficiently allege Article III standing and asserts Plaintiffs' claims are moot. The motion is fully briefed. (Docs. 33, 34.)

Having considered the parties' briefing and the accompanying declarations and exhibits, the Court will deny the motion.

## BACKGROUND

The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) is a multilateral treaty, ratified by the United States, that regulates the international trade of imperiled species, including the leopard. 27 U.S.T. 1087. CITES is implemented in the United States through the Endangered Species Act (ESA) and through regulations promulgated by the U.S. Fish and Wildlife Service (FWS). 16 U.S.C. §§ 1531-

1544; 50 C.F.R. §§ 23.1-23.92. Pursuant to ESA Section 4(d), FWS has adopted a rule allowing for the import of sport-hunted leopard trophies when relevant CITES import requirements are met. 16 U.S.C. § 1533(d) (ESA Section 4(d)); 50 C.F.R. § 17.40(f) (leopard rule).

Leopards (*Panthera Pardus*) are listed in CITES Appendix I. 50 C.F.R. § 23.91; CITES Appendices, *available* at https://www.cites.org/eng/app/appendices.php (last visited March 16, 2022). Appendix I pertains to species "threatened with extinction" and receives the strongest protections. 27 U.S.T. 1087. CITES bans all commercial, international trade in Appendix-I species. 27 U.S.T. 1087; 50 C.F.R. § 23.13(a). CITES allows for non-commercial trade of Appendix I-species, including the export and import of hunting trophies, if, prior to the exportation of a species listed under its provisions, the scientific authority of the state of export finds that "such export will not be detrimental to the survival of the species." 27 U.S.T. 1087. In addition, prior to issuing an import permit for a listed species, the scientific authority for the state of import—in this case FWS—must find that "the proposed import permit would be for purposes that are not detrimental to survival of the species." 50 C.F.R. § 23.35(c); 27 U.S.T. 1087.

U.S. regulations set forth the factors FWS considers in making a "non-detriment finding" and requires that FWS base its determination on "the best available biological information." 50 C.F.R. § 23.61(c), (e), (f). Regulation Section 23.61 states: "In cases where insufficient information is available or the factors [] are not satisfactorily addressed, [FWS takes] precautionary measures and would be unable to make the required finding of non-detriment." *Id.* § 23.61(f)(4).

In October 2020, Plaintiffs filed this action challenging FWS's issuance of leopard import permits. (Doc. 10 at 57-62.) Plaintiffs allege FWS acted arbitrarily, capriciously, and contrary to law when it (1) failed to consider the required factors set forth in 50 C.F.R. § 23.61; (2) failed to use the best available biological information in authorizing leopard trophy imports; and (3) failed to take precautionary measures and refrain from making findings where insufficient information was provided and the factors were not met. (Doc.

10 at 57-62.)

On June 15, 2021, the Court granted Safari Club's Motion to Intervene and permitted it to file the pending Motion to Dismiss. (Docs. 22, 23.)

On June 17, 2021, the Court denied the Federal Defendants' Motion to Dismiss for lack of standing. (Doc. 24.) The Court concluded that Plaintiffs sufficiently alleged that FWS's authorization of import permits cause injury to Plaintiffs' cognizable interest in observing leopards and that their injury will likely be redressed by setting aside the allegedly unlawful permits. (*Id.* at 4.) The Court noted that Plaintiffs alleged, with factual support, that the challenged import permits are "prerequisites" to the trophy hunter embarking on a hunt and, without import authorizations and the ability to bring a trophy home, the "[a]pplicants would not kill the target leopards." (Doc. 24 at 4; Doc. 10 at ¶¶ 20, 136.) The Court concluded that Plaintiffs plausibly alleged that the applicants' decisions to hunt leopards for trophies are at least substantially motivated by FWS's issuance of import permits, thus satisfying the causation and redressability requirements. (Doc. 24 at 5 (citing *Cary v. Hall*, 2006 WL 6198320, *6 (N.D. Cal. Sept. 30, 2006) (recognizing that trophies are the end goal of sport hunters, and therefore, "causation would *not* be implausible if the exemption allowed the importation into the United States of trophies of the three antelope species taken in the wild." (emphasis added))).

## DISCUSSION

In its pending motion, Safari Club moves to dismiss the case for lack of standing, disputing all three elements of standing and asserting Plaintiffs' claims are moot. The Court will address these arguments in order.

**I.   Standing**

    **A.   Applicable Legal Standards**

Standing under Article III of the Constitution is a limitation on a district court's subject matter jurisdiction and is properly addressed in a Rule 12(b)(1) motion. *Catacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic

evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, a "factual challenge 'rel[ies] on affidavits or any other evidence properly before the court to contest the truth of the complaint's allegations." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) (citation omitted).

When a challenger relies on extrinsic evidence, as Safari Club does here, Plaintiffs must respond by presenting "affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possess subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). "The district court may look beyond the pleadings to the parties' evidence without converting the motion to dismiss into one for summary judgment." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). "In evaluating the evidence, the court 'need not presume the truthfulness of the plaintiffs' allegations.'" *Id.* (citation omitted). "Any factual disputes, however, must be resolved in favor of Plaintiffs." *Id.* Additionally, "[w]here jurisdiction is intertwined with the merits, [courts] must 'assume the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record." *Warren*, 328 F.3d at 1139.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Sierra Club v. Trump*, 963 F.3d 874, 883 (9th Cir. 2020). "The party invoking federal jurisdiction bears the burden of establishing these three elements." *Id.*

          **1.**     **Injury in Fact**

To prove injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up).

In the environmental context, "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for the purpose of standing." *Lujan*, 504 U.S. at 562-63; *see also Friends of Earth, Inc. v. Laidlaw Envir. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972))). Because Defendants rely on extrinsic evidence to disprove the injury, Plaintiffs must "submit affidavits or other evidence showing . . . [that] the species were in fact being threatened . . . [and that one of the Plaintiffs] would thereby be 'directly' affected." *Lujan*, 504 U.S. at 563 (discussing summary judgment, but on a factual attack Plaintiffs must still present evidence, as stated above, and the Court will resolve any dispute in Plaintiffs' favor).

Plaintiffs allege that FWS's issuance of import permits increases the number of leopards being killed, putting unsustainable pressure on an already imperiled species. (Doc. 10 at 8.) Plaintiffs also allege that they view, enjoy, study and photograph leopards in the countries and the same areas where leopards have been taken and FWS has authorized the importation of the taken leopards. (Doc. 10 at 9.) Plaintiffs provide declarations and exhibits that support their allegations that import permits threaten the leopards by increasing killings. (Doc. 33-5 ¶¶ 21-23; Doc. 33-9.) Plaintiffs also provide declarations that their ability to enjoy and view leopards would thereby be directly affected by the authorization of import permits. (Docs. 33-1, 33-2, 33-3.) Accordingly, at this stage, the Court finds that Plaintiffs have established injury in fact.

### a. Factual Disputes regarding Plaintiffs' Alleged Injury In Fact Must be Resolved in Plaintiffs' Favor

Safari Club asserts that the Court need not accept as true Plaintiffs' allegations regarding their alleged injury because Plaintiffs' allegations of injury are expressly contradicted by Resolution Conference 10.14, in which the CITES Parties concluded that

leopard hunting offtakes up to the specific quotas are not detrimental to leopards.[1] Safari Club reasons that Plaintiffs cannot suffer a reduced ability to view leopards in the wild when the CITES Parties have concluded that hunting does not reduce the local leopard population. Safari Club further asserts that Plaintiffs cannot credibly assert an injury from an "increase" in harvest of leopards, when they admit that the CITES Parties have approved the leopard hunting quotas for decades.

Safari Club's assertion that trophy hunting is not detrimental to the species relates not only to its jurisdictional challenge but also to the merits of Plaintiffs' underlying claim that FWS issued non-detriment findings without considering relevant factors and sufficient science and information. But in deciding standing, where "jurisdiction is intertwined with the merits, [the Court] must assume the truth of the allegations in a complaint." *Warren*, 328 F.3d at 1139 (citation omitted). Further, to the extent Safari Club's assertions are not intertwined with the merits, the Court nonetheless must resolve "any factual disputes . . in favor of Plaintiffs" because Plaintiffs have provided declarations in support of their injury in fact. *Edison*, 822 F.3d at 517. Accordingly, at this procedural posture, the Court accepts Plaintiffs' allegations as true.

### b. Act of State Doctrine

Safari Club asserts that the Court cannot accept Plaintiffs' allegations of injury as true, as that would violate the act of state doctrine. Under that doctrine, "courts of one country will not sit in judgment on the acts of the government of another done within its own territory." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964) (citation omitted*), invalidated on other ground by Federal Republic of Germany v. Philipp*, 141 S. Ct. 703 (2021). Safari Club asserts that the Court should deem valid the official acts of the range states and CITES parties in concluding that the hunting of leopards is sustainable and non-detrimental to the species. Safari Club reasons that if the Court were to accept

---

[1] The Court will grant Safari Club's request to take judicial notice of the existence and content of the CITES resolutions and range state reports attached to its Exhibit 1. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting that on a motion to dismiss the court may take judicial notice of the existence of a document, but "not for the truth of the facts recited therein").

- 6 -

1  Plaintiffs' allegations as true, the Court would be sitting in judgment of, and substituting
2  its judgment for, the range states and the 183 Parties to CITES.

3  The act of state doctrine bars suit where "(1) there is an official act of a foreign
4  sovereign performed within its own territory; and (2) the relief sought or the defense
5  interposed [in the action would require] a court in the United States to declare invalid the
6  [foreign sovereign's] official act." *Sea Breeze Salt, Inc. v. Mitsubishi Co.*, 899 F.3d 1064,
7  1068-69 (9th Cir. 2018). The doctrine "recognizes that '[w]hen the courts engage in
8  piecemeal adjudication of the legality of the sovereign acts of states, they risk disruption
9  of our country's international diplomacy.'" *Id.*

10  The relief Plaintiffs seek does not require the Court to declare invalid an official act
11  of a foreign sovereign. In issuing an export permit, CITES requires that the state of export
12  find that "such export will not be detrimental to the survival of the species." 27 U.S.T.
13  1087. But it also requires that the state of import find "the import will be for purposes
14  which are not detrimental to the survival of the species." *Id.* In this case, Plaintiffs are not
15  challenging the range states' non-detriment finding for export permits. Plaintiffs are
16  challenging decisions by the FWS, which is required to independently assess whether
17  killing leopards for trophies is detrimental to their survival. *See* 50 C.F.R. § 23.61(h).
18  FWS's actions are reviewable for compliance with U.S. law. If the Court were to conclude
19  that FWS acted arbitrarily in finding that the import was not detrimental to the leopard, the
20  export permits would remain valid and the non-detriment finding by the range states would
21  not be disturbed. Accordingly, the Court finds that the act of state doctrine does not bar
22  this suit. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 897 F.3d 1141, 1148
23  (9th Cir. 2018) ("We apply the doctrine only when we are required to declare invalid, and
24  thus ineffective, the official act of a foreign sovereign." (cleaned up)).[2]

---

[2] The Court notes that even if an official act of a foreign state was at issue, the treaty exception to the doctrine would apply. *See U.S. v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 764, 772 (N.D. Ill. 2003) ("Because the CITES treaty's unambiguous legal principles govern [the permit] process, the treaty exception to the act of state doctrine applies in this case."); *United States v. 2,507 Live Canary Winged Parakeets*, 689 F. Supp. 1106, 1120 (S.D. Fla. 1988) (finding as a prudential matter the act of state doctrine does not apply, in part, because the CITES treaty "clearly requires member nations to ensure the validity of the exportation of another nation's protected wildlife for that benefit of that nation").

### c. Geographical Nexus

Safari Club argues that Plaintiffs cannot demonstrate that they are personally affected by leopard hunting because they do not use the same areas where leopard hunting occurs. Safari Club asserts that Plaintiffs' allegations involving using the area "close," "near," "bordering," or "in the same region" as hunting concessions, are insufficient, and the Court should reject Plaintiffs' factual inference that their members use the "same" area of the Selous Game Reserve because of its vast size. Safari Cub asserts there are two factual problems with Plaintiffs' allegations: the referenced national parks and hunting areas are huge parks, and the hunting areas are separated by allowable types of use such that hunting does not occur in the national parks Plaintiffs visit.

"[T]he Supreme Court has rejected an 'ecosystem nexus' approach that would grant standing to 'any person who uses any part of a "contiguous ecosystem" adversely affected by a funded activity . . . even if the activity is located a great distance away.'" *Sw. Ctr. for Biological Diversity v. United States Forest Service*, 82 F. Supp. 2d 1070, 1076-77 (D. Ariz. 2000) (quoting *Lujan*, 504 U.S. at 565). "The Supreme Court emphasized, however, that it was rejecting standing for 'persons who use portions of an ecosystem *not perceptibly affected by the unlawful action in question*.'" *Id.* (emphasis in original). Thus, "[a] proximity concern arises only where a plaintiff claiming injury from environmental damage fails to demonstrate use of the *area affected by the challenged activity*, and instead only shows that she uses an area roughly in the vicinity of it." *Ecological Rts. Found. v. Pac. Gas & Electric Co.*, 874 F.3d 1083, 1093 (9th Cir. 2017) (quoting *Lujan*, 504 U.S. at 535-66) (cleaned up) (emphasis in original). "Requiring the plaintiff to show actual environmental harm as a condition for standing, however, confuses the jurisdictional inquiry with the merits inquiry." *Id.* at 1093-94 (cleaned up) ("Whether that inflow of pollutants from PG&E's Hayward facility is actually significant enough to harm the affected area is a merits question, not a standing question.").

Applying these principles, the Court concludes that Plaintiffs have established a sufficient geographical nexus to prove injury in fact. Plaintiffs do not allege a generalized

"ecosystem nexus" theory of standing. Plaintiffs allege that the challenged agency actions will concretely harm their ability to view and enjoy wide-ranging leopards in the areas Plaintiffs visit, which they contend as a factual matter is adversely affected by leopard hunting and FWS's authorization of import permits. (Doc. 10 ¶¶ 14, 15, 16, 17, 18, 23, 25.) Plaintiffs provide affidavits in support. (Docs. 33-1, 33-2, 33-3, 33-4, 33-5.) The affidavits explain how trophy hunting not only removes individual target leopards from the areas where hunting occurs, but affects other leopards, drawing male leopards from protected areas, and, when female leopards are killed, negatively impacting the ability to sustain populations. Thus, Plaintiffs' allegations are sufficient to establish injury in fact. *See Ecological Rts. Found.*, 2012 WL 13046362 (N.D. Cal. Jan. 27, 2012) ("ERF is not claiming standing based on its members' use of an area 'in the vicinity' of PG&E's challenged activity, but on their use of the *specific area* they contend, as a factual matter, affected by the activity[.]" (emphasis in original)); *see also Sw. Ctr. for Biological Diversity*, 82 F. Supp. 2d at 1077 ("Southwest Center argues that listed species in one area of the Tonto National Forest can be 'perceptibly affected' by grazing in another area. This is a much different situation from the one addressed by the Supreme Court in *Lujan*.") [3]

### 2. Causation and Redressability[4]

Plaintiffs must also show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 561. In addition, it "must be 'likely,' as opposed to merely

---

[3] Safari Club asserts that Plaintiffs do not allege use of any areas in Zimbabwe or Mozambique from which FWS approved an import permit or non-detriment finding. Therefore, Safari Club argues that the amended complaint fails to allege an injury in fact with respect to the permits for the import of leopard trophies in those two countries. Plaintiffs no longer seek review of the import permit related to the country of Mozambique. (Doc. 24 n.2; Doc. 13 n.4.) Regarding Zimbabwe, the amended complaint provides that Plaintiff Ian Michler personally guides and operates safaris in Zimbabwe and visits the country multiple times a year. (Doc. 10 ¶ 14.) Plaintiff Hartl also plans to visit Zimbabwe. (*Id.* at ¶ 18.) As previously explained, Plaintiffs need not allege use of an area directly where the hunting occurs. They need only allege use of an affected area, which Plaintiffs have done.

[4] The Court addresses causation and redressability together as they are "closely related." *See Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 542 F.3d 1235, 1245 (9th Cir. 2008) (examining causation and redressability together).

'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* "Redress need not be guaranteed, but it must be more than 'merely speculative.'" *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020).

Safari Club asserts that Plaintiffs do not and cannot allege causation or redressability because the authorization of import permits is not the source of Plaintiffs' claimed injury: the hunting offtakes are authorized by independent third parties—the wildlife authorities of the range states and CITES Parties. Safari Club also asserts that the underlying harvest will continue, regardless of whether leopards are imported into the United States. It claims that it is speculative that U.S. hunters will not continue to hunt leopards if they are prohibited from importing the species, and further, if U.S. hunters did stop hunting based on the inability to import, it is speculative that hunters from other countries would not supplant the takings by U.S. hunters.

Causation and redressability do not exist when an injury is the result of "*unfettered* choices made by independent actors not before the courts." *Lujan*, 504 U.S. at 562 (emphasis added). But standing is not precluded simply because the injury is directly caused by a third party. *Lujan*, 504 U.S. at 562. Thus, "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction." *Id.* "To plausibly allege that the injury was 'not the result of the *independent* action of some third party,' the plaintiff must offer facts showing that the government's unlawful conduct 'is at least a substantial factor motivating the third parties' actions.'" *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citation omitted). "So long as the plaintiff can make that showing without relying on 'speculation' or 'guesswork' about the third parties' motivations, she has adequately alleged Article III causation." *Id.*; *see also Lujan*, 504 U.S. at 562 (noting plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury").[5]

---

[5] Many of Safari Club's arguments require the Court to assume the truthfulness of its evidence. However, as previously stated, where Plaintiffs have provided declarations contesting Safari Club's contentions, "any factual disputes . . . must be resolved in favor of Plaintiffs." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

Applying these principles, the Court concludes that Plaintiffs have adequately alleged causation and redressability and have supported their allegations with declarations. In the Amended Complaint, Plaintiffs allege that the challenged import permits are "prerequisites" to U.S. trophy hunters embarking on a hunt, and without import authorizations and the ability to bring a trophy home, the "[a]pplicants would not kill the target leopard if the Service did not" issue an import permit. (Doc. 10 at ¶¶ 20, 136.) Plaintiffs further allege that "U.S. trophy hunters have declared under penalty of perjury that if they are unable to import their trophies, they do not know if they will continue with a scheduled hunt." (*Id.* at ¶ 137.) Plaintiffs have provided evidence in support of their allegations, including declarations by some of Safari Club's members that if they "cannot obtain a trophy, they will not hunt the animal." (Doc. 33-5 at ¶¶ 21-22.) In addition, Plaintiffs point to FWS's website pertaining to the import of leopard trophies from southern Africa, which states: "We understand that most hunters want to know before their hunt whether they qualify for a permit to import their hunted animal." (*Id*. at ¶ 25.) Thus, Plaintiffs have plausibility alleged that the denial of leopard trophy imports would result in less leopard hunting despite the existing quotas and management plans.

Plaintiffs' declarations sufficiently refute Safari Club's speculation that hunters from other countries will not supplant U.S. hunters if they are denied import permits. Plaintiffs provide evidence that when U.S. hunters could not import elephant trophies from Zimbabwe and Tanzania, many said they would not hunt, and hunting outfitters attested to clients canceling, and the inability to find more clients. (*Id*. at ¶¶ 20-25.) Tanzania's elephant trophy exports decreased. (Doc. 33-2 ¶ 23.) As relevant to this case, U.S. hunters account for over half the global leopard trade, (Doc. 33-2 ¶ 21), and the CITES quotas are not currently being met. (Doc. 12-10 at 14.) Based on Plaintiffs' allegations and supporting evidence, the Court finds that it is plausible, and not merely speculative, that the applicants' decisions to hunt leopards for trophies are at least substantially motivated by FWS's issuance of import permits so as to satisfy the requirements of causation and redressability. *See Mendia*, 768 F.3d at 1013; *cf. Cary v. Hall*, 2006 WL 6198320, *6 (N.D. Cal. Sept. 30,

2006) (recognizing that trophies are the end goal of sport hunters, and therefore, "causation would *not* be implausible if the exemption allowed the importation into the United States of trophies of the three antelope species taken in the wild." (emphasis added)). Accordingly, the Court will deny the motion to dismiss for lack of standing.[6]

## II.  Mootness

Safari Club argues that Plaintiffs' challenge to FWS's decision to grant 13 specific import permits is moot because the permits have already been fulfilled (i.e., the leopard has been hunted) or the permits have expired without being fulfilled.

"The burden of demonstrating mootness is a heavy one." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). "A moot action is one where 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (citation omitted). An exception to mootness applies when the action complained of is "capable of repetition yet evading review." *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992). "Government actions fall within this category if (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Id.*

The Court concludes that Safari Club has failed to meet its burden of establishing mootness and finds that this case falls under "the capable of repetition yet evading review" exception.[7] The durations of the leopard import permits is too short to allow full litigation.

---

[6] The Court will deny Safari Club's request to reconsider the applicability of out-of-jurisdiction non-binding decisions including *Friends for Animals v. Ashe*, 174 F. Supp. 3d 20 (D.D.C. 2016), *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29 (D.D.C. 2014), and *Fund for Animals v. Norton*, 295 F. Supp. 2d 1 (D.D.C. 2003). In these cases, the courts held that Plaintiffs failed to sufficiently allege causation or redressability to challenge CITES import permits. Unlike these cases, Plaintiffs have put forth sufficient evidence including evidence that U.S. hunters will not hunt if they cannot import their trophies and evidence that U.S. hunters would likely not be supplanted by hunters from other countries.

[7] Plaintiffs assert that their claims are not moot in the first instance, citing *Defs. of Wildlife, Inc. v. Endangered Species Sci. Auth.*, 659 F.2d 168, 175 (D.C. Cir. 1981). In that case, the appeals court held that, although the plaintiffs were challenging the export permits for a given year, the plaintiffs were also "more broadly [] attacking the standards federal agencies apply in approving bobcat exports," and thus, the claims were not moot as the standards to apply continued to be at issue. *Id.* In contrast to *Defenders of Wildlife*, regulations have since been implemented setting forth the standards to be applied, and Plaintiffs are asserting that FWS did not meet the standards, or incorrectly applied the

The authorized import permits are only valid for a year, and a leopard must be taken, and could be taken, anytime during the one-year period. (Doc. 23 at 16.) That time period (one year or less) is too short to allow full litigation of the challenged import permit before it expires. *See Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1018 (9th Cir. 2012) (noting that actions "lasting only one or two years evade review"). Thus, for example, Plaintiffs no longer challenge the FWS's issuance of a non-detriment finding in April 2019 and a CITES import permit (20US29996D/9) on April 23, 2020 for an Applicant from Louisiana to import one leopard from a hunt taking place on the Selous Game Reserve, Tanzania, because the leopard to be imported has been killed. (*See* Doc. 35.)

There is a reasonable expectation that Plaintiffs will be subject to the same harms even after the annual permits have expired. Plaintiffs have presented evidence that FWS's findings and permits have been nearly identical from 2019 to 2021, repeating the same alleged legal flaws challenged in the complaint. (Doc. 33-5 at ¶¶ 18-19.) Thus, there is a "reasonable expectation" FWS would issue more permits suffering from the same alleged defects, i.e., the defects are capable of repetition. *See Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 787 (9th Cir. 2012) (noting that "the challenged conduct is capable of repetition where there is evidence that it has occurred in the past"); *see also Defs. of Wildlife, Inc. v. Endangered Species Sci. Auth.*, 659 F.2d 168, 175 (D.C. Cir. 1981) (finding mootness exception applied to review of CITES permits). Therefore, the Court concludes Plaintiffs' claims are not moot.

//
//
//
//
//
//
//

---

standards, to issue the permits, and that it continues to do so. In this context, the Court concludes that a capable of repetition yet evading review analysis is appropriate.

- 13 -

# CONCLUSION

For the foregoing reasons,

**IT IS ORDERED**:

1. The Motion to Dismiss (Doc. 23) is **DENIED**.
2. Within twenty-one (21) days of the filing of this Order, the parties shall meet and confer regarding the entry of a scheduling order in this action.
3. Within twenty-eight (28) days, the parties shall submit a Joint Report setting forth:
    a. the suggested date on which the administrative record will be filed;
    b. the suggested date a motion to strike or supplement the administrative record shall be due;
    c. a briefing schedule for dispositive motions; and
    d. any other matters that the parties wish to address concerning the scheduling of the matter.
4. The parties shall attach to the Joint Report, a proposed form of order setting forth the suggested dates to govern this action.

Dated this 21st day of March, 2022.

_____
Honorable Jennifer G. Zipps
United States District Judge